UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SALVADORE BATTAGLIA | CIVIL ACTION |
| VERSUS | No. 10-4311 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, ET AL. | SECTION I |

ORDER AND REASONS

Before the Court is a motion[1] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by defendant, the United States of America. Plaintiff, Salvadore Battaglia, has filed an opposition.[2] For the following reasons, the motion to dismiss is **GRANTED.**

*BACKGROUND*

Battaglia alleges that he sustained serious injuries to his head, neck, back, legs, and ankles when he fell through the bathroom floor of his travel trailer on June 28, 2007 and on September 2, 2007.[3] The Federal Emergency Management Agency ("FEMA") had provided the travel trailer to Battaglia as a temporary housing unit in the wake of Hurricane Katrina.[4] The unit was one of nearly 90,000 temporary housing units distributed to residents of the Gulf Coast region following the storm.[5]

FEMA contracted with B & I Services, Inc. ("B & I") to undertake the responsibility of inspecting and maintaining Battaglia's trailer while he used it as temporary housing.[6] Although B & I noted a soft spot on the bathroom floor on at least three occasions during its regular inspections of the trailer, Battaglia alleges that neither B & I nor FEMA made any repairs before

---

[1] R. Doc. No. 27.
[2] R. Doc. No. 31.
[3] R. Doc. No. 1, ¶¶ 11, 13.
[4] *Id.* at ¶ 5.
[5] R. Doc. No. 38-1, ¶ 9.
[6] R. Doc. No. 27-2; R. Doc. No. 38-1.

he fell through the floor on June 28, 2007.[7] An emergency work order placed on that date indicates that B & I temporarily fixed the floor, but that it "still need[ed] replacing."[8] Although B & I continued to note the problem on its inspection forms over the course of the next few months, the repairs were never completed.[9] Battaglia fell through the bathroom floor for a second time on September 2, 2007.[10]

On November 15, 2010, Battaglia filed this lawsuit against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, alleging that his injuries were caused by the negligence of FEMA, its agents and employees, in that they:

    a. Failed to properly inspect the trailer for dangerous conditions;

    b. Failed to take prompt and adequate corrective measures once it became aware of the dangerous condition of the trailer;

    c. Failed to require that that it be provided with adequate maintenance and inspection logs with respect to the trailer;

    d. Failed to take adequate precautions to prevent the risk of injury;

    e. Exposed plaintiff to an unreasonable risk of harm without providing adequate protection to prevent that risk;

    f. Failed to undertake an adequate inspection of the FEMA trailer; and

    g. Failed to provide proper maintenance and proper repair to the FEMA trailer.[11]

Battaglia seeks damages for his past and future medical expenses, physical pain and suffering, mental pain and anguish, permanent residual disability, and permanent disfigurement and scarring.[12]

---

[7] R. Doc. No. 1; R. Doc. No. 30-1.
[8] R. Doc. No. 30-1.
[9] R. Doc. No. 1, ¶ 13; R. Doc. No. 30-1.
[10] R. Doc. No. 13.
[11] R. Doc. No. 1, ¶ 15.

On November 7, 2011, the United States filed this motion to dismiss Battaglia's complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[13] The United States argues that FEMA delegated responsibility for inspecting and maintaining Battaglia's travel trailer to B & I as an independent contractors and that the FTCA exempts it from liability for the acts or omissions of independent contractors.[14] Although Battaglia does not dispute that B & I was an independent contractor, he argues that FEMA can be held directly liable for its own negligence in failing to ensure the quality and timeliness of the repairs made by B & I pursuant to its contract with FEMA.[15] Battaglia alternatively requests that the Court afford him an opportunity to conduct additional jurisdictional discovery before ruling on the motion to dismiss.[16]

## *LAW*

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proof. *Id.* The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

"A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). If the

---

[12] *Id.* at ¶ 18.
[13] R. Doc. No. 27.
[14] *Id.*
[15] R. Doc. No. 31.
[16] *Id.*

3

defendant makes such a factual attack, the plaintiff "is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

## *DISCUSSION*

### I. The Federal Tort Claims Act

The United States argues that it cannot be held liable for any acts or omissions committed by B & I in inspecting and maintaining Battaglia's trailer because FEMA delegated that responsibility to B & I as an independent contractor. The FTCA permits recovery in tort against the United States for damages which arise "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). "It is elementary that the United States, as sovereign, is immune from suits save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980) (alterations and internal quotation marks omitted) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769-770, 85 L. Ed. 1058 (1941)). The FTCA constitutes a limited waiver of sovereign immunity that courts must narrowly construe in favor of the United States. *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999); *Linkous v. United States*, 142 F.3d 271 (5th Cir. 1999).

As the FTCA defines "employee of the Government" to include officers and employees of "any federal agency," but specifically excludes "any contractor," the United States has not waived its immunity with respect to the acts or omissions of independent contractors. 28 U.S.C.

§ 2671; *United States v. Orleans*, 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." *Orleans*, 425 U.S. at 814 (citing *Dalehite v. United States*, 346 U.S. 15, 30-31, 73 S. Ct. 956, 97 L. Ed. 1427 (1953)). "[I]f the act was not committed by an 'employee of the Government,' then the court must dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Linkous*, 142 F.3d at 275 (citing *Broussard v. United States*, 989 F.2d 171, 177 (5th Cir. 1993)).

"The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Linkous*, 142 F.3d at 275 (citing *Orleans*, 425 U.S. at 814). The Fifth Circuit also considers the following factors as set forth in § 220 of the Restatement (second) of Agency (1958) when distinguishing among employees and independent contractors for the purposes of the FTCA:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;

5

>    (g) the method of payment, whether by the time or by the job;
>
>    (h) whether or not the work is a part of the regular business of the employer;
>
>    (i) whether or not the parties believe they are creating the relation of master and servant; and
>
>    (j) whether the principal is or is not in business.

*Linkous*, 142 F.3d at 275-76. "Although such a determination does not require mathematical precision, if the government lacks the power to control an individual, plus several factors listed in § 220 weigh in favor of independent contractor status, then a court must conclude that the individual is an independent contractor." *Id.* at 276.

The evidence submitted in support of this motion shows that FEMA did not exercise control over the details of B & I's work. The contract governing the relationship between FEMA and B & I provided that "FEMA will assign units. . . . The Contractor shall resolve maintenance issues and needs relating to the units."[17] B & I assumed contractual responsibility for "performing monthly preventative maintenance inspections, responding to routine and emergency maintenance calls, [and] making repairs . . . ."[18] B&I was required to have resources available 24 hours a day, 7 days a week, and to maintain a toll-free maintenance telephone number for residents to report maintenance problems.[19] Although FEMA set specific objectives and passively monitored compliance with the goals set forth in their contract, B&I had control over the day-to-day responsibilities for servicing Battaglia's travel trailer.[20]

---

[17] R. Doc. No. 27-2, ¶ 4; R. Doc. No. 27-3, p. 60.
[18] R. Doc. No. 27-2, ¶ 4; R. Doc. No. 27-3, p. 62.
[19] R. Doc. No. 27-3, p. 63.
[20] In his sworn declaration, James Buras, the Senior Project Manager of Contract Support Group for FEMA, stated that:
> FEMA relied upon B & I to perform its obligations under the respective contract. FEMA maintained the right and exercised limited oversight in order to ensure contractual compliance. . . . FEMA provided approximately over 90,000 Temporary Housing Units in the wake of Hurricanes Katrina and Rita and

In addition to a lack of control over the work of B & I, Thomas Warder, the FEMA employee responsible for monitoring B&I's performance, stated in his sworn declaration that "the particular skill and certifications of an outside contractor (in this case, B & I) were required."[21] The contract required that B & I hire and maintain qualified professionals to properly maintain the assigned Temporary Housing Units."[22] Warder stated that B & I and its employees, subcontractors, and agents were not considered federal employees, nor did FEMA intend to create any employment relationship in the subject contract."[23] The contract also provided for payment by the job in fixed amounts and B & I agreed to furnish its own labor, tools, equipment and materials.[24]

Because each of the above factors weighs in favor of finding that B & I was not an employee of a federal agency for the purposes of the FTCA, the Court finds that the United States cannot be held liable for any acts or omissions of B & I in servicing Battaglia's trailer. *See Tapp v. United States*, No. 09-3036, 2010 WL 3070373, at *2-*3 (E.D. La. Aug. 2, 2010) (Engelhardt, J.) (holding that maintenance companies servicing FEMA trailers after Hurricanes Katrina and Rita acted as independent contractors); *Jasper v. Fed. Emergency Mgmt. Agency*, No. 09-07177, 2010 WL 3021825, at * 3-*4 (E.D. La. Jul. 29, 2010) (Duval, J.) (same), *aff'd*, 414 Fed. Appx. 649 (5th Cir. 2011); *Salazar v. United States*, 633 F. Supp. 2d 232, 235-36 (E.D. La. 2009) (Lemelle, J.) (same).

---

contracted with several outside contractors such as B & I to provide needed maintenance. FEMA views its quality control obligations under contract such as the above cited contract to require general overview as it would be unfeasible for FEMA to review each routine or requested repair needed to maintain over 90,000 units.

R. Doc. No. 38-1, ¶¶ 8-9.
[21] R. Doc. No. 27-2, ¶ 8.
[22] R. Doc. No. 27-2, ¶ 8; R. Doc. No. 27-3, pp. 70-71.
[23] R. Doc. No. 27-2, ¶ 18.
[24] R. Doc. No. 27-3, pp. 4-19, 70.

Battaglia does not dispute that B & I was an independent contractor. He argues instead that FEMA is directly liable for its own negligence in failing to prevent his injuries. Battaglia argues that the contract governing the relationship between FEMA and B & I imposed a mandatory duty on FEMA to evaluate the contractor's performance for quality and timeliness.[25] By failing to actively monitor B & I's performance under the contract, Battaglia argues that FEMA may be held liable for his injuries based upon its own negligence. *See Logue v. United States*, 412 U.S. 521, 532-33, 93 S. Ct. 2215, 37 L. Ed. 2d 121 (1973) (holding that the United States could not be held liable based upon the acts or omissions of a county sheriff monitoring a

---

[25] Battaglia refers to the following portions of FEMA's contract with B & I in support of its argument:

> **E.5 Performance Incentives**
>
> During performance of this contract, the Contracting Officer's Technical Representative, or other designated FEMA or government personnel, shall evaluate the Contractor's performance in accordance with it's overall level of compliance with the contract terms and conditions and the demonstrated quality and timeliness of the services provided under the contract . . . .
>
> **E.6 Government Quality Assurance Plan and Surveillance**
>
> The Government will perform those quality assurance procedures that may be necessary to verify that the Contractor's performance is in accordance with the terms of the contract. The Contracting Officer's Technical Representative will perform government quality assurance routinely; however other activities may be called upon to support this effort as required. For those tasks listed in the PRS, the Contracting Officer's Technical Representative or designated Project Monitor will follow the methods of surveillance specified in this contract. The Contracting Officer's Technical Representative or designated Project Monitor will record all surveillance observations and will maintain a file of all inspection results.
>
> Government surveillance of tasks not listed in the PRS may occur during the performance of this contract. Such surveillance will be done according to standard inspection procedures or other contract provisions. Successive months of unsatisfactory performance for any SSPA may result in other appropriate action(s) by the Contracting Officer in accordance with the Inspection of Services clause, including Termination for Default.
>
> **E.7 Methods of Surveillance**
>
> The Government may use a variety of surveillance methods to evaluate the Contractors performance. These include, but are not limited to, 100% inspection, random sampling, and review of customer complaints.

R. Doc. No. 31-1.

federal prisoner but remanding for consideration of "the distinct question regarding the negligence" of a deputy U.S. Marshal).

Although Battaglia characterizes his claim as one predicated on the "direct negligence" of FEMA in failing to perform its contractual oversight duties, this Court agrees with the United States that the independent contractor exception bars Battaglia's claims. Having delegated the responsibility to inspect and maintain Battaglia's trailer to B & I, FEMA "became immune from liability for the negligent implementation of such measures" by B & I. *See Washington v. U.S. Dep't of Hous. and Urban Dev.*, No. 94-1859, 1997 WL 21389, at *6-*7 (N.D. Tex. Jan. 14, 1997) (citing *Alexander v. United States*, 605 F.2d 828, 833-34 (5th Cir. 1979)). The fact that FEMA reserved a right to inspect the quality of B & I's performance does not vitiate its immunity under the independent contractor exception. *See Alexander*, 605 F.2d at 833-34 (holding that the government's monitoring of a safety program did not "convert[] an independent contractor into some kind of joint venturer with the government."); *United States v. Page*, 350 F.2d 28, 30 (10th Cir. 1965) ("The fact that the contract may have reserved to the United States the right to inspect the work and facilities of the independent contractor . . . and the right to stop the work, does not in itself override or alter the general rule of nonliability for the torts of the contractor."); *see also Mitchell v. United States*, No. 08-91, 2009 WL 2489065, at *3-*4 (S.D. Miss. Aug. 10, 2009); *Robbins v. Computer Sciences Corp.*, 486 F. Supp. 2d 581, 586-87 (S.D. Miss. 2007)); *Miller v. McElwee Bros.*, No. 05-4239, 2007 WL 2284546, at *6 (E.D. La. Aug. 6, 2007) (Fallon, J.) ("Courts have consistently held that [reserving the right to ensure compliance with a government contract] does not impose a duty on the government that is enforceable by third parties."). Because Battaglia has not alleged negligent acts by the United States that rise

9

above mere contract oversight, the Court finds that his claims must be dismissed for lack of subject-matter jurisdiction.

## II.  Jurisdictional Discovery

Battaglia requests that he be given an opportunity to conduct additional jurisdictional discovery before the Court rules on the motion to dismiss.  This Court may dismiss a case for lack of subject-matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Because the only contested issue for this motion is whether FEMA can be held liable for its own "direct negligence," Battaglia's request for discovery is "necessarily limited" to gathering information relating that issue.  *See Jasper*, 414 Fed. Appx. at 652.  "Vague assertions of the need for additional discovery are as unavailing as vague responses on the merits."  *Id.* (citing *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991)).

In this case, the complaint supplemented by the undisputed facts in the record, present sufficient evidence for the Court to conclude that it lacks jurisdiction over this matter.  The United States submitted the full contract between FEMA and B & I along with a sworn affidavit establishing that FEMA delegated responsibility for inspecting and maintaining Battaglia's trailer to B & I.  Although Battaglia requests an opportunity to depose Warder and to discover "various logs and documents," he has failed to identify with any reasonable degree of precision what information he seeks to obtain from Warder, or which of the "various logs and documents" he seeks to discover that have not already been provided by the United States. *See Jasper*, 414 Fed. Appx. at 652.  Moreover, while Battaglia argues that the additional discovery would be relevant to show that FEMA failed to comply with its contractual oversight duties, this Court has

previously explained that FEMA's non-compliance with contractual oversight duties cannot establish liability on the part of the United States. Accordingly, Battaglia has not shown a need for additional jurisdictional discovery.

## *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss is **GRANTED** and plaintiff's claims against the United States are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's request for additional discovery is **DENIED**.

New Orleans, Louisiana, February 22, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**